# BAKER, Appellant, v. McDANIEL et al.

### Division Two, December 9, 1903.

1. **Nuisances: PROCEDURE: INJUNCTION.** The establishment of the existence of a nuisance, the recovery of damages, and the equitable relief of preventing or abating it, may be sought in one proceeding, in an equity court. But before the power of the chancellor will be put in motion the existence of the nuisance and the injury must first be established.

2. ———: **ON PUBLIC PROPERTY.** To enable one to maintain an action for injuries received by him resulting from the maintenance of a nuisance on property dedicated to public use, it is necessary for him to show that he has sustained special damages therefrom, over and above the injury which the community at large suffers.

3. ———: ———: **GENERAL FINDING.** A general finding by the trial court that plaintiff is not entitled to recover, is, in effect, a finding that the nuisance which plaintiff makes the basis of her action, does not exist.

4. ———: ———: **RIGHT OF CITY TO GROUND: EXTENT OF DECREE.** The court can not, at the suit of a private person asking for the abatement of a nuisance on property. alleged to be a public street, to which the city is not a party, declare the title, and award a part of the property to the city, the rest to the parties, and abate the nuisance thereon, even in an equity case.

5. ———: ———: **BY WHOM BROUGHT.** Where the nuisance is a public one, and it is clear that some special injury is occasioned to an individual and the injury is a continuing one, courts of equity may exercise their power at the suit of the individual to abate it; but the power is usually exercised at the instance of the public, and not of private individuals.

6. ———: **EQUITY: FULL RELIEF: MEANING.** The rule that a court of equity, after once acquiring jurisdiction of a cause, will do complete justice and grant full relief, means that the court, keeping in view the purposes of the action, will reach out and adjust all equities necessary to give force and effect to its decree and remedy the evil sought to be corrected by the action. It does not mean that in a suit to abate a nuisance on an alley alleged to be a public way, to which the city is not made a party, the court will determine the title to the property and decree that the property does not belong to defendants, but to the city, and then go further and abate the nuisance.

Appeal from Greene Circuit Court.—*Hon. Jas. T. Neville,* Judge.

AFFIRMED.

*James Baker, Charles J. Wright* and *William A. Gardner* for appellant.

(1)  The statute of limitations will not run against the public.  Dillon, 675; State v. Warren, 51 Mo. App. 174; Williams v. St. Louis, 120 Mo. 403; R. S. 1899, sec. 4270; State v. Walters, 69 Mo. 463; Cummings v. St. Louis, 90 Mo. 259; Brown v. Carthage, 128 Mo. 17. (2)  Lands dedicated to public use at common law remain for all other purposes the property of the dedicator.  Ragan v. McCoy, 29 Mo. 366; Pierce v. Chamberlain, 82 Mo. 618; Cummings v. St. Louis, 90 Mo. 259; Campbell v. City of Kansas, 102 Mo. 326; Vossen v. Dantel, 116 Mo. 379; Dillon, Mun. Corp., 633, 634; Tiedeman, 611.  (3)  The right of access to abutting owners is private property and can be acquired only by deed.  Fuhr v. Dean, 26 Mo. 116; Vaughan v. Rupple, 69 Mo. App. 585. (4) The owner of the land retains the exclusive right to the use of it for any other purpose of use or profit not inconsistent with the public use, and may maintain actions for any encroachments.  Baker v. St. Louis, 75 Mo. 671; Vossen v. Dantel, 116 Mo. 375; Dillon, 633; Bishop's Non-Contract Law, sec. 990. (5) Dedication is a question of fact and each case must largely rest on its own foundation.  Gamble v. St. Louis, 12 Mo. 617; Becker v. St. Charles, 37 Mo. 13; State v. Walters, 69 Mo. 463; State v. Wells, 70 Mo. 635; Kaime v. Harty, 73 Mo. 316; Zimmerman v. Snowden, 88 Mo. 218; Price v. Town of Breckinridge, 92 Mo. 378; Board of Regents v. Painter, 102 Mo. 464; Vossen v. Dantel, supra; Bauman v. Boeckeler, 119 Mo. 189; Milling Co. v. Riley, 133 Mo. 574.

*Tatlow & Mitchell* for respondents.

(1) It is elementary that the question whether land has been dedicated to public use is primarily one of intent, and to establish such a dedication and a divestiture of the citizen's landed property in favor of the public "the proof ought to be so cogent, persuasive and full as to leave no reasonable doubt of the existence of the owner's intent and consent." Landis v. Hamilton, 77 Mo. 554; Bauman v. Boeckeler, 119 Mo. 199; Erwin v. Dixon, 9 How. 30; Brink v. Colyer, 56 Mo. 154. (2) The facts in this case bring it within the rule well established in this State, that the west line of the defendants' property has been definitely fixed, and agreed to between the defendants and their ancestors, and those under whom they claim, and the owners of the adjoining property under whom the plaintiff claims, and that this agreement need not be established by positive and direct evidence, but the facts in the case at bar are amply sufficient to establish the agreement. Brummell v. Harris, 148 Mo. 440; Blair v. Smith, 16 Mo. 233; Jacobs v. Mosely, 91 Mo. 457; Turner v. Barker, 64 Mo. 457; Barnes v. Allison, 166 Mo. 103. (3) No case cited by the appellants, or which can be cited, gives any countenance to her contention that she can try by bill in equity the defendants' title to this five-foot strip of ground. The defendants are in possession of it and have been for a number of years, claiming it as their property under a valid and bona fide claim. Simply calling it a nuisance does not give a court of equity, jurisdiction, and neither she nor the city could oust the defendants from possession of this property except by an action in ejectment. The organic law of this State guarantees to the defendants, if they desire it, a trial of this issue by a jury. Sec. 28, art. 2, Const. (4) The defendants raised this specific objection by demurrer to the bill, raised it by ob-

jecting to the evidence, and under the express provisions of the statute they are entitled to raise it again in this court, because the petition states no cause of action, in that they have an adequate and complete remedy at law. The objection that the petition states no cause of action can be raised at any time. Sec. 602, R. S. 1899; State ex rel. v. Hoyt, 123 Mo. 357; Childs v. Railroad, 117 Mo. 414.

### STATEMENT.

FOX, J.—That we may fully understand this case as presented by the pleadings in the trial court, we here insert them.

On the 22d day of December, 1899, the plaintiff below filed her petition in the Greene Circuit Court, and sued out a writ in due form thereon, returnable to the January term, 1900, of said court, which petition is as follows:

"The plaintiff for her cause of action in the above entitled cause states, that she is, and for the last sixteen years has been, the owner in fee simple of the real estate situated in lots seventeen, eighteen and twenty in block five of the original town of Springfield, in Greene county, State of Missouri, bounded and described as follows: Beginning at a point twelve feet east of the northwest corner of the public square; running from thence north fifty feet; thence west one hundred and twenty-nine feet; thence south eighty-one feet; thence east one hundred and seventeen and a half feet; thence north thirty-one feet; thence east twelve feet to the beginning.

"Plaintiff further states that at the time she acquired the title to said land, James Baker, her husband, became the owner in fee of the remaining part of said lot eighteen, and a strip twelve feet wide off of the west side of said lot seventeen, lying adjoining it on the east; that the lands so owned by her and her husband, in lot

seventeen, constituted a strip twelve feet in width, extending along the west side of said lot, from the public square north to Olive street, a distance of one hundred and seventeen and a half feet; that said strip with three feet in width more, along the east side thereof, added to it, making fifteen feet in width in all, was dedicated to public use as a public highway more than fifty years prior to this date by the then owners thereof and has been continuously in such use during the whole of that time. That said dedication was and is for public use for pedestrians only and is a footway, and was in effect an extension of the sidewalk along the west side of the public square thence to Olive street on the north, and is now generally known by the name of the Baker Arcade.

"Plaintiff further states that the ground adjoining said Arcade on the west was divided into eight different lots fronting on the same, soon after said dedication was made; that the only access to them was by it, and that it has continued to be a public highway in much use ever since its dedication, and that when plaintiff purchased the property so owned by her, it was an important and active business center, which had added greatly to the value of her property and constituted the chief inducement to her purchase. That at the time she purchased the same all of said buildings were occupied for business purposes, and had been so from the time of their construction until removed by plaintiff in 1885, to make room for a large and commodious four-story brick structure eighty-one feet wide by one hundred feet long, completed by her in the year 1886. That said building fronts fifty feet on said Arcade on the west side thereof, and thirty-one feet on the public square, and for the purpose of widening and making the said Arcade more useful, the front of said building was set back ten feet west of the west line thereof, making the Arcade twenty-five feet wide, instead of fifteen as formerly.

"Plaintiff further states that in the year 1868, the ancestors of the defendants herein, and from whom they derived their title to the same, were the owners in fee of all of said lot seventeen except the twelve-foot strip embraced in said Arcade as aforesaid; that they then erected thereon a large brick building three stories in height now known as the City Hall, the west wall of which corresponds with the east line of said three-foot strip which constitutes a part of said Arcade, thereby confirming said former dedication and rededicating the same.

"Plaintiff further states that in the year 1886, James Baker, her husband, reconstructed said Arcade, by elevating the grade thereof its entire length and breadth two feet, and by paving the same with nice flagstones at a cost of five hundred dollars. That defendants consented to and sanctioned and approved of said reconstruction, and by so doing they fully rededicated said three feet to public use, and by permitting and sanctioning the expenditure of the money which such reconstruction cost, they are estopped from denying such dedication.

"Plaintiff further states that said Arcade extends along the western line of defendant's lot and building, making it a corner lot instead of an inside lot lying in a closed corner, out of the way of public passage as formerly and adds more than fifty per cent to value of said property. That the contribution of a part of the ground occupied by said Arcade confers upon the remainder of said lot and the owners thereof valuable private easments or franchises in the whole of it, which did not exist and could not be exercised without it.

"Plaintiff further states that since the reconstruction of said Arcade the whole of it has been in continuous public use, as such highway, without interruption until the 26th day of November in the year 1890, when the defendants, at a late hour in the night, secretly slipped a cigar stand in there, and placed it upon the

paving next to the wall of their building, thereby occupying all the ground so dedicated to public use by their ancestors and themselves, and a strip two feet and six inches in width dedicated as aforesaid by plaintiff and those from whom she derived title, extending from the south to the north end of the land owned by her in said lot 17, to which they have not even a color of title.

"Plaintiff says that said stands are small temporary structures made of boards and consist of a partition on their west side and at each end, set against the wall of said City Hall building, which constitutes the east wall, and are covered with the same kind of boards; that they are five and a half feet wide by fifty feet long; that they are too small for the transaction of the business carried on, and are only used for the storage of the goods kept for sale; that the customers and those who transact the business occupy the public way in the same manner as such business is generally transacted by the keepers on such stands in the public streets, and by so doing they have practically taken possession of and occupy the whole Arcade, for their private business, without any authority or license to do so; that a large portion of said stands are used for boot-blacking and similar purposes, which are carried on by a number of colored men, who with them associate, occupy seats, much of the time, on the pavement in said Arcade, constituting a band of loafers, making the place repulsive, instead of attractive as it was intended to be.

"Plaintiff further states that said stands and the business carried on in connection with them, materially obstruct and interfere with the public use of said Arcade as a public highway, and constitute a grievous public nuisance. That they have and do materially injure the property owned by plaintiff, fronting on the same, and have caused a reduction in the rental value of more than forty dollars per month. That she has been damaged by said nuisance and tresspass to an amount not less than five thousand dollars in the aggregate.

"Plaintiff further states that, if the three-foot strip of ground owned by defendants as aforesaid has not been dedicated to public use as hereinbefore stated, and is not in public use, the defendants have no right to use the remainder of said Arcade as a means of access to and departure from their private property, that being a private use of the same, which can not be exercised by any but those owning the property, or have a franchise therein by owning a part of the property so in public use. That by so using it they are not only guilty of maintaining a nuisance as aforesaid, but have and are committing a trespass upon the property of plaintiff, thereby increasing the injury they have done to her and adding to their liability.

"Plaintiff further states to the court here that the south wall of said City Hall building was placed and now stands more than two feet south of the south line of lot 17 and the part thereof owned by defendants as aforesaid, by which said building extends upon and occupies a strip of ground constituting a part of the public square, two feet in width north and south and seventy-seven feet in length east and west. That said public square is a tract embracing about three acres of land that was long since dedicated to and is now in public use. That said wall so occupying a part of the public square is directly in front of plaintiff's large building aforementioned and only three feet from the lands so owned by her, that it materially injures the view from and free access to her said building, thereby creating a serious, continuous, special injury to her and her property and constitutes a troublesome public nuisance.

"Plaintiff asks for a decree abating each and all of such public nuisances and for an injunction compelling the removal of said stands and prohibiting the establishing and maintaining any such structure or business in said Arcade and for a judgment of five thousand dollars for the damage so suffered by her and for her

costs, and such other relief as she may be entitled to."

Defendants filed the following answer to the petition as filed by plaintiff:

"Now at this day come the above-named defendants, and for their amended answer to plaintiff's petition say that they admit:

"1. That in 1868 the ancestors of the defendants and James Vaughan were the owners in fee of lot 17 in block 5 in the town of Springfield, Missouri, except twelve feet off the west side of said lot, and that the defendants derived and acquired title to said land from their ancestors and James Vaughan.

"2. Defendants admit that their ancestors and James Vaughan in 1868 erected a large three-story brick building on a part of their said property, known as the City Hall building.

"3. Defendants admit that more than fifty years prior to the 22d day of December, 1899 (the date plaintiff filed her petition in this case), the then owners of the property *immediately west of defendants' said property dedicated to public use* as a public highway a strip of ground running from the square north to Olive street, and that the land so dedicated has been continuously in such use during the whole of that time.

"4. Defendants admit that in the year 1885 the plaintiff erected a four-story brick building on her property known as the Baker Block, and admit that for the purpose of widening said public highway, and making it more useful, the front of said Baker Block was set back ten feet to the west, thereby dedicating to public use ten feet more on the west of said public highway, and that said public highway has since been known as the Baker Arcade, and that it has continued to be a public highway in such use ever since that time, and *leading* from the square to *Olive street* in said city and *separating plaintiff's* and *defendants' said property.*

"5. Defendants admit that in 1886 said Baker Arcade was reconstructed by elevating the grade there-

of two feet its entire length and breadth and by paving the same with flagstone.

"6. Defendants admit that they are in possession and now occupying five feet of ground west of their said building and that the same is occupied by defendants by a cigar stand five feet wide and running north the entire length of their said building.

"Defendants deny each and every allegation in plaintiff's petition contained, except the above specified allegations in said petition which the defendants admit to be true.

"Defendants aver and state that the west wall of said City Hall building, so erected by their ancestors and James Vaughan as aforesaid, was and is five feet west of the west boundary line of their said property.

"Defendants further state that the north portion of their said five feet west of the west wall of their said building has, since the erection of said building, been occupied by a brick wall entrance to the basement of said building five feet wide by ten feet long north and south, and about two and one-half feet high next to the building and sloping gradually to the entrance of the cellar, and also occupied by two gratings two feet wide over windows to said cellar on the west of said building, and that the north part of said five feet has been occupied by a small cigar stand five feet wide and ten feet deep, running back from the square, for more than five years prior to the 21st day of June, 1886, and until removed on said 21st day of June, 1886, by the agent of plaintiff under the written contract hereinafter set out at length.

"Defendants further state that the only ground ever dedicated to public use, and which now constitutes the Baker Arcade, is the ten feet of ground that was dedicated more than fifty years ago by the then owners of the property immediately west of the defendants' said property, as defendants' property is hereinbefore described, to-wit: All of lot 17 in block 5 of the original

town of Springfield, Missouri, except twelve feet off
the west side of said lot, the west boundary line of
which is five feet west of the west wall of their said City
Hall building.

"Defendants further state that the *reconstruction
of said Baker Arcade in 1886 by elevating* the grade
thereof two feet its entire length, and by paving the
same with flagging, was done by and under the super-
vision of James Baker, but defendants say that the said
Baker paved said Arcade as aforesaid as the agent and
representative of the plaintiff in this case, and defend-
ants further say that at the time of the paving of the
said Baker Arcade the said James Baker also paved,
with the same kind of flagstone with which the Arcade
was paved, the said five feet of ground of the defendants
in this case lying immediately west of their said City
Hall building.

"Defendants further state that their said five feet
of ground was not by said paving dedicated to public
use, or made a part of said Baker Arcade, and that the
same has never been dedicated to public use by either
the defendants, or those under whom they claim, and
that there never was any intention on the part of the
defendants, or any of them, or any of those under whom
defendants claim, to so dedicate said five feet of ground,
but that said five feet of ground was paved by the said
Baker as the agent of his wife under a written contract,
which is in words and figures as follows, to-wit:   .   .   .

"Defendants further state that there is no plat of
the original town of Springfield on file in the recorder's
office in said county, and that if said plat ever existed
it had been lost and destroyed many years before the
plaintiff or defendants acquired their said property;
that the original town of Springfield was laid out from
the intersection of the section corners of sections 13, 14,
23 and 24, in township 29, range 22; that said section
corners were lost and destroyed, and for many years
have been so lost and destroyed and unknown corners,

and that hence at the time the defendants' ancestors, William Jasper McDaniel and Charles Sheppard, and James Vaughan, acquired their said property above described, and for many years prior thereto, the boundary lines in said original town of Springfield were in great confusion and uncertainty and are still so, except as fixed by agreement and possession, and hence it was very difficult, if not impossible, to locate or ascertain the exact boundary lines of lot 17 or any other lot in said original town of Springfield, or of the lines of the streets or alleys therein.

"Defendants further state that at the time their said ancestors, Jasper McDaniel and Charles Sheppard, and James Vaughan, erected said City Hall building on their property in 1868, it was then and there agreed by and between James Vaughan and the defendants' said ancestors and the then owner of the ground on the west, to-wit, John Young, under whom the plaintiff claims title to her said property, that the said James Vaughan and William Jasper McDaniel and Charles Sheppard's west line of their said property was five feet west of the west wall of their said brick building, then and now known as the City Hall building, and that immediately west of the said Vaughan, McDaniel and Sheppard's said property (with the west line thereof fixed as aforesaid) was the alleyway so dedicated as aforesaid by those under whom plaintiff claims, running north and south by the said Vaughan, McDaniel and Sheppard's said property, the width of which said alleyway, east and west, was about ten feet, and that immediately west of said public alleyway, or passway, was the east line of the property now owned by the plaintiff.

"Defendants further state that the said Vaughan, McDaniel and Sheppard, upon making said agreement, then and there took possession of their said property under said agreement, and that the said Vaughan, McDaniel and Sheppard, and these defendants claiming

under them, have been in the actual, open and notorious possession thereof under said agreement since 1868, occupying the same in the manner hereinbefore set out, and by cigar stands, boot-black stands, and in other ways, and have received rent thereon from 1868 to this time, and have always claimed to said line so agreed upon.

"Defendants further state that the then owner of the property now owned by plaintiff, to-wit, John Young, took possession of his said property under said agreement and claim to the east line of the said alleyway, or passway (which was ten feet wide as aforesaid) under said agreement, and always admitted and never denied that the west line of said alleyway or passway was five feet west of the west wall of the said City Hall building.

"Defendants further state that by said mutual agreements and the taking possession by the respective parties above mentioned, and the claiming of possession thereunder, and the recognition thereof, the defendants' said west line of their said property was then and there established as five feet west of the west wall of said City Hall building. Defendants further state that the plaintiff herein also agreed to and recognized the establishment of said west line of defendants' property by a written contract made by her agent, James Baker, as hereinbefore set out at length, and by such contract admitted the possession of defendants to said five feet of ground, and expressly agreed thereby that by the paving thereof, as aforesaid, the possession of the said McDaniel and Sheppard, the ancestors of these defendants, to said five-foot strip of ground should remain and continue as it was before the paving thereof, and that the plaintiff herein is estopped from denying the possession of said McDaniel and Sheppard, and these defendants claiming under them, to said five feet of ground under said agreement.

"Defendants further state that the possession of

the defendants, and their ancestors, of said five feet of ground in the manner hereinbefore set out, to-wit, by occupying the north portion thereof from 1868 (the time of erecting said building) down to 1886, with their said cellarway and the windows and cigar stand, and collecting rent thereon during said time at various intervals, as defendants had done, and by occupying the south ten feet of said five-foot strip with a cigar stand for five years prior to the 21st day of June, 1886, and that by occupying it since the 21st day of June, 1886, by collecting rent thereon and exercising other acts of ownership, and by the continuous possession thereof and occupancy of the same for more than ten consecutive years by cigar stands since 1886, together with said original agreement, and the recognition of such agreement by plaintiff in 1886, is conclusive and binding on plaintiff as to the west line of the defendants' said property.

"Wherefore the defendants say that the premises considered the west boundary line of said defendants' property should be and is conclusively established, as against plaintiff and all other persons, at five feet west of the west wall of their said brick building, and having fully answered they pray to be discharged without day and their costs, and for all other and further relief.

"Defendants for another, further and separate defense, state that they have been in the open, notorious, continuous and adverse possession of the five-foot strip of ground lying immediately west of the west wall of the of the building designated in plaintiff's petition as defendants' three-story brick building, known as the City Hall building, and running north and south the entire length of said building, prior to and since the time that the plaintiff acquired her property, in lots 17, 18 and 20, in block 5 of the original town of Springfield, Missouri, and have been in such open, notorious, continuous and adverse possession of said five feet of ground

for more than ten consecutive years last past under color
of title and claiming title thereto.

"Hence, defendants say that they have acquired
title to said five feet of ground under the ten-year stat-
ute of limitations in such cases made and provided in
this State, and having fully answered pray to be dis-
charged without day and their costs."

The replication is a special denial of the defensive
matter set up in the answer.

Upon the submission of this cause to the court, upon
the evidence as introduced by plaintiff and defendants,
the court made the following decree and finding of facts:

"The court finds that the line between the two tracts
in controversy herein, is two and ninety-one hundredths
feet at the south end; that defendants and their ances-
tors have been in open possession of the remaining por-
tion of the five feet for more than ten years, claiming to
own the same; that the putting down of the flagging by
their permission and consent was a taking and holding
of possession, within the meaning of the law, and an im-
provement by defendants, which is a possession in law;
that Judge Baker put down said flagging when he built
the Baker Block; that it was all done with his means
and given to his wife.

"The court fails to find that the south side of the
City Hall building projects into the public square. The
court finds that all these lines are very uncertain and
problematical, and it is impossible to ascertain their
exact location; and that the parties have acted upon the
five feet west of the City Hall as being in possession
and control of the defendants; that the plaintiffs are not
entitled to recover."

To which decree and finding of facts plaintiff duly
excepted at the time.

Upon the finding of facts as herein set forth, the
following judgment was entered:

"Now at this day come the above named parties
plaintiff and defendants, by their respective attorneys,

and this cause now coming on for hearing said parties announce ready for trial, and a jury being waived by agreement this cause is submitted to the court for hearing, and the court proceeded to hear the evidence in the case pro and con, and after hearing all the evidence and arguments of counsel, and being fully advised in the premises the court finds all the issues in favor of the defendants as pleaded by them. It is therefore considered, adjudged and ordered by the court that plaintiff, Maggie C. Baker, take nothing by her suit herein against defendants, but that the same be and is hereby dismissed, and that the defendants go hence thereof without day, and have and recover of and from the plaintiff, Maggie C. Baker, all the costs herein laid out and expended for which execution may issue.''

· From this judgment, plaintiff, in due time, prosecuted her appeal to this court.

OPINION.

A careful inspection of the record in this cause indicates that a volume of evidence was introduced by both parties, for the purpose of locating the true lines, dividing the property of plaintiff and defendants. Also testimony tending to show a dedication of certain parts of the lots, not only by plaintiff, but also by defendants, to public use. As in the view we take of the legal questions involved in this controversy, the question of title or the right of possession, at least to the extent indicated by the briefs of counsel, is not the determining issue, we will not burden this opinion with a detailed statement of the evidence upon this issue, which seems to have overshadowed the main and only issue presented by the pleadings in this cause—the existence of a nuisance. The trial court did not undertake, definitely, to settle the lines in dispute, but in its findings said ''that all these lines are very uncertain and problemati-

cal, and it is impossible to ascertain their exact location.'' The testimony sufficiently indicated such use and occupation of the property by plaintiff, fronting the Arcade, as entitled her to the relief sought, if the testimony established the existence and maintenance of a nuisance on the strip of ground in the possession of the defendants, which operated injury or hurt to the property, used or occupied by the plaintiff. The defendants were, at the time of the institution of this suit, in the possession of the strip of ground which it is claimed was dedicated to public use, and the testimony tends to show possession, and claim of title to the property for a number of years, and the finding of the trial court is that defendants had been in possession for a number of years. That defendants claimed the title and right of possession to the property is clearly indicated as far back as 1886, by the agreement with James Baker as follows:

''This memorandum, in relation to the possession and occupancy of certain real estate in Springfield, Missouri, made this 21st day of June, 1886,

''Witnesseth, that Charles Sheppard of Springfield, Missouri, and Mrs. E. E. McDaniel, as executrix of the will of W. J. McDaniel, deceased, and as devisee thereunder, are now in possession of the following portions of a strip of ground five feet wide on the west side of the brick building occupying the western part of lot No. 17, block No. 5, original survey of Springfield, Greene county, Missouri, known as the City Hall building, in the northwest corner of the public square, said strip fronting five feet on public square, now and for four years has been occupied by a little frame 'shanty' five feet wide by ten feet deep back north. The north end of said strip is now occupied and has been for more than ten years by a brick-walled entrance five feet wide by ten feet long north and south to the cellar underneath said City Hall building, and two gratings two feet wide over the windows to said cellar and between

the fruit stand and the brick wall around cellar entrance for more than ten years, and this memorandum agreement is that said Baker may remove said 'shanty,' gratings and brick entrance to cellarway and pave the entire five feet strip of ground, but that said Sheppard and McDaniel do not thereby abandon their said possession of same and that said Baker does not thereby acquire any possession of same, but that the possession of Sheppard and McDaniel to said portion of said strip remains the same as it had been and as if said Baker had not paved the same.

"James Baker,
"E. E. McDaniel,
"Chas. Sheppard."

It will be observed that this is a proceeding to abate a nuisance, praying for injunctive process, and also for the recovery of damages for injury to property of the plaintiff, resulting from the erection and maintenance of the alleged nuisance.

The nature and character of this cause of action are clearly indicated in that part of the pleading that undertakes to state the cause of action. It avers:

"Plaintiff says that said stands are small temporary structures made of boards and consist of a partition on their west side and at each end, set against the wall of said City Hall building, which constitutes the east wall, and are covered with the same kind of boards; that they are five and a half feet wide by fifty feet long; that they are too small for the transaction of the business carried on, and are only used for the storage of the goods kept for sale; that the customers and those who transact the business occupy the public way in the same manner as such business is generally transacted by the keepers of such stands in the public streets, and by so doing they have practically taken possession of and occupy the whole Arcade, for their private business, without any authority or license to do so; that a large portion of said stands are used for boot-blacking and

similar purposes, which are carried on by a number of colored men, who with them associate, occupy seats, much of the time, on the pavement in said Arcade, constituting a band of loafers, making the place repulsive, instead of attractive as it was intended to be.

"Plaintiff further states that said stands and the business carried on in connection with them, materially obstruct and interfere with the public use of said Arcade as a public highway, and constitute a grievous public nuisance. That they have and do materially injure the property owned by plaintiff, fronting on the same, and have caused a reduction in the rental value of more than forty dollars per month. That she has been damaged by said nuisance and trespass to an amount not less than five thousand dollars in the aggregate.

"Plaintiff further states that, if the three-foot strip of ground owned by defendants as aforesaid has not been dedicated to public use as hereinbefore stated, and is not in public use, the defendants have no right to use the remainder of said Arcade as a means of access to and departure from their private property, that being a private use of the same, which can not be exercised by any but those owning the property, or have a franchise therein by owning a part of the property so in public use. That by so using it they are not only guilty of maintaining a nuisance as aforesaid, but have and are committing a trespass upon the property of plaintiff, thereby increasing the injury they have done to her and adding to their liability.

"Plaintiff further states to the court that the south wall of said City Hall building was placed and now stands more than two feet south of the south line of lot 17 and the part thereof owned by defendants as aforesaid, by which said building extends upon and occupies a strip of ground constituting a part of the public square, two feet in width north and south, and seventy-seven feet in length east and west. That said public

square is a tract embracing about three acres of land that was long since dedicated to and now is in public use. That said wall so occupying a part of the public square is directly in front of plaintiff's large building aforementioned and only three feet from the lands so owned by her, that it materially injures the view from and free access to her said building, thereby creating a serious, continuous, special injury to her and her property and constitutes a troublesome nuisance.

"Plaintiff asks for a decree abating each and all of such public nuisance and for an injunction compelling the removal of said stands and prohibiting the establishing and maintaining any such structure or business in said Arcade and for a judgment of five thousand dollars for the damage so suffered by her and for her costs, and such other relief as she may be entitled to."

The answer puts in sharp dispute the allegations as quoted, hence it is made apparent that the primary purpose of this suit is to remedy the evils and injurious results of a nuisance. It is not sought to try title to the property, which may incidentally be involved in the proceeding, nor the right of possession to such property. The vital issue and the one that must first be determined in this cause, is, as to the erection and maintenance of the nuisance complained of in the petition.

"Nuisance, in its largest sense, signifies 'anything that worketh hurt, inconvenience, or damage.' It is either public, annoying all the members of the community; or it is private, injuriously affecting the lands, tenements, or hereditaments of an individual." [3 Bl. Comm., 215; 2 Greenleaf's Evidence, sec. 465.]

Mr. Wood, on Nuisance, defines a nuisance thus:

"A nuisance, in the ordinary sense in which the word is used, is anything that produces an annoyance—anything that disturbs one or is offensive; but in legal phraseology it is applied to that class of wrongs that arise from the unreasonable, unwarrantable or unlawful use by a person of his own property, real or per-

sonal, or from his own improper, indecent or unlawful personal conduct, working an obstruction of, or injury to, a right of another or of the public, and producing such material annoyance, inconvenience, discomfort, or hurt, that the law will presume a consequent damage. Indeed, it may be stated, as a general proposition, that every enjoyment by one of his own property, which violates the right of another, in an essential degree, is a nuisance, and actionable as such at the suit of the party injured thereby. While it is true that every person has and may exercise exclusive dominion over his own property of every description, and has a right to enjoy it in all the ways and for all the purposes in which such property is usually enjoyed, yet, this is subject to the qualification that his use and enjoyment of it must be reasonable, and such as will not prejudicially affect the rights of others.'' [Vol. 1 (3 Ed.), sec. 1.]

In the earlier cases the power of courts of equity were exercised sparingly, in preventing and abating nuisances. In the case of Welton & Edwards v. Martin, 7 Mo. l. c. 311, Judge Scott, speaking for the court, says:

''Eden, in his valuable work on Injunctions, speaking of nuisances, observed: 'Whatever may be the actual jurisdiction upon this point, it is, however, certain, that courts of equity are at present extremely unwilling to interpose without a trial at law; a question, therefore, has always arisen in these cases, whether the court will grant or continue an injunction *till the trial.*' ''

Sherwood, J., in the case of Paddock v. Somes, 102 Mo. l. c. 240, says:

''The question of nuisance having been established at law, and, where this has been done, the courts will grant an injunction as a matter of course, where, as here, such nuisance is of a continuous or constantly recurring character.''

Under the well-settled rules of practice now, the

existence of the nuisance need not necessarily first be established by a separate action, before courts of equity will afford permanent relief in keeping with the injury. Wood's Law of Nuisances clearly announces the modern rule in respect to this subject.    He says:

"The preventive remedy for nuisances, aside from abatement by act of the party, is by injunction issuing out of a court of equity.    Formerly this power was exercised sparingly, and only in extreme cases, at least until after the right and the question of nuisance had been first settled at law.    But now the only effectual remedy for the abatement of a nuisance, except where special provision is made therefor by statute, is in a court of equity, and the jurisdiction is predicated upon the broad ground of preventing irreparable injury, interminable litigation, a multiplicity of actions, and the protection of rights."    [Vol. 2 (3 Ed.), sec. 777.]

The law is settled beyond dispute that the establishment of the existence of a nuisance, the recovery of damages, and the equitable relief of preventing and abating it, may be sought in the one proceeding, in a court of equity.    However, it is equally well settled that before the power of the chancellor will be put in motion, in case of a nuisance, the existence of the nuisance and the injury must be established.    The right to a full and complete remedy in an action in respect to a nuisance, was fully recognized in the case of Paddock v. Somes, supra.    It was said in that case, upon the question of the union of two causes of action:

"In certain circumstances our statute allows different causes of action, whether legal or equitable, to be united in the same petition, provided they be separately stated.    A prayer for equitable relief can hardly be *called a cause of action;* but, if it could be so termed, it was competent under the statute, section 2040, Revised Statutes 1889, and frequent rulings of this court to unite in the same petition legal and equitable causes of action, when connected with the same subject of action.    Be-

sides, our statute authorizes an injunction to issue in aid of a civil action, when the 'relief or any part thereof consists in restraining the commission or continuance of some act of the defendant, the commission or continuance of which during the litigation would produce injury to the plaintiff.' ''

Wood, on Nuisances, very clearly announces the sound rule on this subject, which finds support in all of the well-considered cases of the various States. He says:

"The jurisdiction of a court of equity over cases of private nuisance is now well established, and in a proper case for equitable interference it will assume and take jurisdiction and give the party all the relief to which he is entitled, even to the settlement of damages. But, in order to entitle a party to equitable relief, his right must be clear, and the injury established, as in doubtful cases the party will be turned over to his legal remedy." [Vol. 2 (3 Ed.), sec. 786.]

It will be noted that the plaintiff, in this cause, insists that the business conducted by defendants is on property dedicated to public use, and the manner of conducting the business, the stand erected, etc., constituted a public nuisance. To enable plaintiff to maintain this action for injuries resulting from a public nuisance, it is necessary to establish that she has sustained special damage from such nuisance, over and above the injury which the community at large suffers. NAPTON, J., in the case of Smiths v. McConathy, 11 Mo. l. c. 334, in discussing this question, said:

"In an action for a private nuisance, it is not necessary to allege or prove any special damage. In a private action for a public nuisance, such allegations and proofs are necessary. No one individual can maintain an action for a public nuisance, unless he has sustained some special damage from such nuisance, over and above the injury which the community at large suffer."

However, plaintiff undertakes to bring this cause within the above rule by charging a state of facts which, if true, would constitute a public nuisance; then follows with the averment of special injury to her property.

The allegations as to the character of business, the manner of conducting the business, charged to be a public nuisance and the injury alleged, resulting to plaintiff's property, were sharply put in issue by the answer, and this issue was submitted to the trial court upon the evidence introduced.

The trial court found the issues for the defendant. The court had the witnesses before it, doubtless observed them, and applied the usual rules in weighing their testimony, the question of the character of business conducted by defendants, and the injuries alleged to plaintiff's property, was all gone over in the trial, and after a careful examination of the testimony, as disclosed by the record, we are not disposed to disturb the court's finding.

It is true that the court made no special finding as to the existence of the nuisance complained of, yet it did find that plaintiff was not entitled to recover, and this was, in effect, a finding upon that issue. It is also insisted that it is the duty of this court to review the testimony, and determine, not only the question as to the existence of a public nuisance, but also the questions of dedication to public use, the title to the property occupied by defendants, and the right of possession. It is alleged in the petition that the strip of ground upon which this nuisance is said to exist, was dedicated by both plaintiff and defendants, to public use to the city of Springfield. The evidence tends to show possession, and the claims of possession by the defendants for a number of years. The contention, under this state of facts, amounts to this, that this court will determine the legal rights of not only the plaintiff and defendants in respect to this property, but also award the enterpris-

ing city of Springfield a substantial interest—that of public use—without the city requesting it, without being a party to the proceeding, and this is to be accomplished by a proceeding in equity, in a suit by a private individual who seeks to abate a public nuisance. With all deference to the able presentation of this question by the learned counsel for plaintiff, we are unwilling to announce that a court of equity, even under the broad system of equitable jurisprudence, should exercise this power, under the facts in this case. In order to warrant the trial court or this court in adjusting the legal rights of parties, to this property, all persons having a substantial interest should be before the court. The defendants in this case claim to be the owners of the property in dispute, are now in possession, and the testimony tends to prove that they have been in possession and claiming the same for a number of years, and if this property has been dedicated to public use and the public is wrongfully deprived of the possession of it, or if the plaintiff has a right in respect to the property of which she is deprived, in an appropriate proceeding with all the parties in interest before the court, those wrongs can be remedied; but those rights can not be recovered in a suit by a private individual to abate a public nuisance and recover damages for the injuries resulting therefrom, upon the facts as disclosed in this case.

There is a distinction to be observed in the exercise of the power sought in this case, by courts of equity, in respect to a private and public nuisance. Mr. Wood, in the text, lays down the rule very strongly; in fact, broader than the well-considered cases upon that subject sanction. He says:

"It is only in the case of private nuisances or of common nuisances where private rights are invaded, that a court of equity will interfere except upon the relation of public officers. And this is the rule even in a

case of an obstruction to a public street amounting to a public nuisance.'' [Vol. 2 (3 Ed.), sec. 777.]

We take the true rule to be, as deduced from all the authorities, that, as to private nuisances, there is no question as to the proper exercise of the power of courts of equity in affording full and complete relief, provided it is clearly established that the private nuisance exists. As to a public nuisance, where it is clear that some special injury is occasioned to the individual, a continuing injury, courts of equity may exercise their power; but this power is usually exercised at the instance of the public, and not private individuals. We again repeat that upon the weight of the testimony in this cause, and the finding of the trial court, plaintiff did not establish any special injury to her property, some of the witnesses going to the extent of saying that the business complained of was a benefit instead of an injury, hence plaintiff does not bring herself within the rule for the suppression of a public nuisance.

We will say, in addition, if the evils complained of in the petition exist and constitute such a flagrant violation of the rights of the public, by the willful and wrongful obstruction of a highway dedicated to public use, we confess that the city of Springfield is very modest in the assertion of her full and complete power to remedy such an evil.

In support of the contention that the court should, upon the facts in this case, at the suit of a private individual, ascertain and define the rights of all persons in respect to this property, whether parties to the proceeding or not, our attention is earnestly directed to the case of Wilmarth v. Woodcock, 66 Mich. 331. That case in no way conflicts with the conclusions reached in the one before us. It will be noted from the facts in that case it was a private nuisance complained of—a dispute between two individuals—and the court found as a matter of fact that a nuisance existed. The plaintiff, in the Michigan case, was in possession of the prop-

erty charged to have been injured by the nuisance. The injury complained of was as to the convenient enjoyment of that possession. The defendant did not take possession of the soil, but erected a barn, the cornice of which extended over her land. It was the extension of this cornice which the court found constituted the nuisance. It is apparent from the views expressed in the opinion, that if the only controversy had been the location of the boundary line, the jurisdiction of the court would not have been exercised. The court, in expressing its views in that controversy, makes plain the proposition that the question of boundary line was a mere incident to the main equitable proceeding. It said:

"A careful examination of these cases will show that each one differs from the one at bar. Something more is involved here than a mere dispute about a boundary line. It is apparent that an action of ejectment, if it would lie upon the part of complainant, would not be adequate for her relief. But she could not well bring ejectment, as she was in possession of the soil, and her possession was not interfered with as far as the land was concerned. It is not entirely clear that she could bring ejectment when she was holding the ground, and the disturbance to her possession was projecting a cornice in the air over it. But, be that as it may, if the true line between the premises be as claimed by complainant, the maintenance of the cornice where it is, is a nuisance, and one in the nature of a permanent injury to her property, if it shall be allowed to continue, which calls into exercise the jurisdiction of equity, as the only proper tribunal to afford full and adequate relief."

That is not this case, and we repeat that the defendants are in possession of the property, and, as the testimony indicates, have been claiming it against the plaintiff, the city of Springfield, and every other person. This claim is specially emphasized by the agree-

Baker v. McDaniel.

ment with Mr. Baker, introduced in evidence. The court found that plaintiff was not entitled to recover any damages, and as to the right of possession of the property, plaintiff or the city of Springfield have a full and complete remedy at law, in respect to that right.

There is an ample and speedy remedy to settle the title or the right of possession to this property, without making the unwise precedent of doing so in an action entirely foreign to that purpose.

We fully recognize that just rule, that courts of equity, after once acquiring jurisdiction of a cause, will do complete justice and grant full relief. That does not mean that the court will lose sight of the main subject of the action; but simply means, keeping in view the purpose of the action, it will reach out and adjust all equities, necessary to give force and effect to its decree, remedying the evil sought to be corrected in the action. Injunctive process is sought in this proceeding. As has elsewhere been said by an eminent author: "Nor ought the process of injunction be applied but with the utmost caution. It is the strong arm of the court, and to render its operation benign and useful, it must be exercised with great discretion and when necessity requires it."

Entertaining the views as herein expressed, the judgment of the trial court will be affirmed.

All concur, except *Burgess, J.,* absent.