SCHEURICH, Appellant, v. SOUTHWEST MISSOURI LIGHT COMPANY, Respondent.

St. Louis Court of Appeals, January 24, 1905.

1. WATERCOURSES: Mills and Milldams: Eminent Domain. The privileges of chapter 131 of the Revised Statutes of 1899 apply to owners of grist mills, and companies organized to furnish light and water to cities will not be granted right of eminent domain thereunder to take or damage private property in constructing or raising dams over watercourses.

2. ———: Obstruction: Public Nuisances. Under section 8752 of the Revised Statutes of 1899, the raising of a dam across a watercourse beyond its former height whereby the watercourse was obstructed, is a public nuisance.

3. ———: ———: Damage to Individual. A private citizen who has suffered peculiar or special damages beyond that done to the public at large, by the obstruction of a watercourse, is entitled to relief at his private suit, both at law and in equity.

4. ———: ———: ———: Pleading. And it is proper for an individual so injured, in his action, to plead the necessary allegations for equitable relief by writ of injunction in a petition which calls for damages also.

5. ———: ———: ———: ———. The essential facts to be averred and proved, when an abatement of such nuisance is asked, in addition to compensation in damages, are that the annoyance and loss would be continuous or recurrent and irreparable in damages.

6. ————: ————: ————: **Remedy.** The fact that one has recovered double damages under section 8752 of the Revised Statutes of 1899, on account of obstructions in a watercourse by raising the height of a dam, does not preclude his right to enjoin the continuance of the nuisance which caused his injuries, if the facts justify such relief, and if his judgment for damages was awarded as a compensation only for the damages already sustained.

7. ————: ————: ————: **Right to Abate Nuisance.** Where the petition in an action for damages caused to plaintiff's property by the obstructions of a watercourse in raising the height of a dam, contained also the necessary allegations for injunction to restrain the continuance of the nuisance, the finding of the issues in plaintiff's favor on the law side of the case and awarding him damages, entitled him to his relief by injunction as a matter of right, where the evidence showed that the injury would continue.

8. ————: ————: ————: **Laches.** Where the plaintiff protested against the construction of the dam in the first place, but submitted to the injury for five years and saw the defendant improve it at a heavy outlay and protested again when the dam was raised above its former height, but brought his suit to abate the nuisance within three years thereafter, he was guilty of such laches as to debar him from relief against the structure as originally built, but he was not guilty of laches such as to prevent his relief against the nuisance caused by its being raised.

Appeal from Newton Circuit Court.—*Hon. Henry C. Pepper,* Judge.

REVERSED AND REMANDED (*with directions*).

*C. H. Montgomery* for appellant.

(1) There is no estoppel in this case. Plaintiff objected to the building of the dam as soon as it was started. He served a notice individually, objecting to the building of the dam, and also as road overseer to prevent blockading the public road. Simpson v. Railroad, 145 Mo. 81, 46 S. W. 739. (2) A dam erected without complying with chapter 113 of the Revised Statutes of 1899, entitled "Mills and Milldams" is a public nuisance. Any one injured can recover double dam-

ages. It is an unlawful structure, and no lapse of time will legitimate it. R. S. 1889, secs. 7018 and 7020; Huffman v. Vaughan, 72 Mo. 465. (3) No person can build or heighten any dam, or cause any other stoppage or obstruction on or across any watercourse without first obtaining permission of the circuit court according to law, and in case of any injury caused thereby, shall be liable for double damages. R. S. 1889, sec. 7018. And all such dams so erected are declared public nuisances by the statutes of Missouri. R. S. 1889, sec. 7020. A nuisance is continuous, and is a fresh nuisance every day it is suffered to remain unabated. Paddock v. Somes, 102 Mo. 227, 14 S. W. 746; Grogan v. Foundry Co., 87 Mo. 321; Beckley v. Skroh, 19 Mo. App. 75. (4) Where the existence of a nuisance has been established at law, courts will grant an injunction, as a matter of course, where the nuisance is of a continuous or constantly recurring character. Schopp v. St. Louis, 117 Mo. 135, 22 S. W. 898. (5) The present owner is liable for continuing the nuisance after it came into its possession and ownership. McGowan v. Railway, 23 Mo. App. 204; Tate v. Railway, 64 Mo. 155; Payne v. Railway, 112 Mo. 6, 20 S. W. 322; McKee v. Railway, 49 Mo. App. 174; George v. Railway, 40 Mo. App. 433. (6) Where plaintiff's petition states a cause of action showing damages resulting from a nuisance and asking injunction, they are properly stated in one petition and one count. Whipple v. McIntyre, 69 Mo. App. 402. (7) The plaintiff suffers injury over and beyond the injury to the public at large. His lands are overflowed, the soil on his garden land is being washed away, and the value of his lands are being destroyed by this public nuisance. It is, therefore, perfectly competent for him to maintain this action. Givens v. Van Studdiford, 86 Mo. 158. (8) If a nuisance is established by a verdict at law or by the court itself, the wrongful act will be restrained Wood on Nuisance (3 Ed.), secs. 441, 442, pp. 596-7. (9) Unless authorized by law-

ful authority no one can interfere to any material extent with the waters of a running stream. Where a bridge or structure is erected without lawful authority there may be a recovery without proof of negligence. Abbot v. Railroad, 83 Mo. 276-7. (10) If plaintiff suffers some special damage from a public nuisance, over and above that suffered by the community in general, he may have his action, even though it be true that others similarly situated to him might have like action. Schoen v. Kansas City, 65 Mo. App. 138; Glaessner v. Brewing Assn., 100 Mo. 516, 13 S. W. 707.

*Eaton & Loomis* for respondent.

(1) Under section 8750, Revised Statutes 1899, appellant recovered the same damages which he would have been entitled to receive under proceedings within the provisions of the same chapter upon issuance of writ of *ad quod damnum*. Slatterly v. St. Louis, 120 Mo. 183, 25 S. W. 521. (2) As the elements of damages or the method of proving the same is out of the case, and the judgment in plaintiff's favor for damages is final, we insist that two conclusions follow. First. The plaintiff has had his action at law under the statute for his entire damages, because of the illegal construction of the dam. Second. Having recovered such entire damages he can not obtain equitable relief by private action abating the alleged public nuisance, which only exists by reason of the provisions of the same statute under which he recovered such damages. Dickson v. Railroad, 71 Mo. 575; Van Hoozier v. Railroad, 70 Mo. 145. (3) From what appears in the petition, the statute and the evidence, the plaintiff sought to, and did, recover entire damages; having done so, he can not now be heard to say the nuisance was temporary. Bielman v. Railroad, 50 Mo. App. 151. The rule is that where the damages are of a permanent

character and go the entire value of the estate affected by the nuisance, recovery may be had for the entire damages in one action. Scott v. Nevada, 56 Mo. App. 189; Bungenstock v. Drainage District, 163 Mo. 222, 64 S. W. 149; Powers v. Railway, 158 Mo. 87, 57 S. W. 1090. (4) It is a rule of law that a private person may not of his own motion abate a strictly public nuisance under any circumstances. The offense is one which can only be reached and prevented by indictment or by proceedings in equity at the suit of the State by its proper officers. Wood on Nuisances (2 Ed.), sec. 732. The remedy defined is an action by the person who sustained such special injury for damages occasioned by the public or mixed nuisance. Borden v. Vincent, 24 Pick. 301; Perley v. Hilton, 55 N. H. 444; Charnley v. Water Power Co., 109 Wis. 563; Mills v. Hall, 9 Wend. 315, 24 Am. Dec. 160. A party may by laches deprive himself of the equitable remedy against a nuisance. Wood on Nuisances (2 Ed.), sec. 804. (5) Upon the record and under the facts in this case the appellant is estopped. The record here presents a complete estoppel. Appellant has sued for and recovered the same damages under the same statute, which would have been recoverable and applicable in proceedings upon writ of *ad quod dammum.* That equitable relief will be denied upon proof of plaintiff's laches and delay in bringing his suit, the authorities are quite uniform, and are summarized in section 804 of Wood on Nuisances (2 Ed.). (6) Where the delay is coupled with an acquiescence, if by reason of such delay the defendant is allowed to go ahead and make expensive erections the plaintiff will be deprived of all equitable relief. Fresno v. Fresno Co., 98 Cal. 179; Railroad v. Railroad, 7 Daly (N. Y.) 174; Southard v. Canal Co., 1 N. J. Eq. 518; Attorney-General v. Railroad, 24 N. J. Eq. 49; Bassett v. Mfg. Co., 47 N. H. 426; Goodin v. Canal Co., 18 Ohio St. 169; Sprague v. Steere, 1 R. I. 247. And actual intention to deceive and mislead is

not an essential element of the estoppel. Lydick v. Gill, 94 N. W. (Neb.) 109; Dispard v. Bennett, 44 S. E. (W. Va.) 448. The power to abate a nuisance, especially where invoked by an individual, does not mean the power to destroy. The method least injurious must be employed. Waggoner v. South Gorin, 88 Mo. App. 34; 1 Dill., Mun. Corp., sec. 378; 2 Beach, Pub. Corp., sec. 1020; Allison v. Richmond, 51 Mo. App. 133. (7) The case does not warrant relief in equity by injunction destroying the dam and the valuable property connected with its use.

GOODE, J.—This is an action for damages for the construction and continuance of a nuisance, accompanied with averments of irreparable injury from its continuance, to prevent which and a multiplicity of suits, the nuisance should be enjoined, relief of that kind being asked, as well as damages. The case stated is founded on section 8750 of the Revised Statutes of 1889, which provides that a person who builds or heightens a dam or other obstruction across a watercourse in this State without proceeding according to the statutes regulating the construction of dams, shall forfeit double damages to any one injured by the obstruction to be recovered by civil action. The nuisance complained of is a dam across Shoal creek in Newton county. Scheurich owns a farm containing two hundred acres or more in the valley of Shoal creek at Grand Falls, a natural waterfall about fifteen or sixteen feet high on the *east* side and nine feet high on the *west* side of the stream. Scheurich's farm lies on the east bank of the creek and in a large bend, the creek flowing around the west side of his farm in a horseshoe curve. The difference in the height of the falls on the two sides of the stream is caused by a break in the rocky bed of the stream, the rock being much lower on the west side and for about ninety feet from the west bank. In 1887 a man named Moffett built a wooden dam just

above the falls and across this ninety-foot depression in the bed of the stream, but not extending to the eastern bank. At the east end of the dam he built a wing extending eastward, but not to the bank, thus enabling the water to flow uninterruptedly over the fall on the east side. The statutes of Missouri then, as now, required a person who proposed to erect a dam across a watercourse, not a navigable stream, to petition the circuit court of the county in which the dam was to be erected for permission to erect it. Upon the filing of the petition it became the duty of the circuit court to cause a writ *ad quod damnum* to issue, commanding the sheriff to summon twelve persons to inquire touching the matters contained in the petition, and, among other things, what damages adjacent proprietors would sustain by reason of the inundation consequent to the erection of the dam, whether the mansion house of such proprietors or their outhouses, curtilages, gardens or orchards would be overflowed, to what extent the passage of fish would be obstructed, and whether the health of the neighborhood would be affected in consequence of the erection of the dam. It was provided that on the return of the inquest or writ anybody aggrieved by the verdict might file objections, whereupon issues could be made up and tried, as in other civil cases. But if no objections were filed, and it appeared to the court that the mansion house of any proprietor, or his outhouses, curtilages, gardens or orchards would not be overflowed, or the health of the neighborhood materially affected by the stagnation of the water, the court might grant or refuse the permission prayed, according to its judgment of what would be most reasonable and just under all the circumstances. The statutory provisions bearing on the subject will be found in chapter 131 of the Revised Statutes of 1889, entitled "Mills and Milldams." It should be stated that the height of a dam can only be increased by proceedings similar

to those requisite for the lawful erection of a dam in the first place.

Moffett put in his dam without complying with the statutes. In 1890 the Southwest Missouri Electric Light & Water Power Company, an incorporated company, bought the Moffett dam and other property appurtenant thereto. Said company tore out the wooden dam and erected a concrete dam with a wooden superstructure in place of it, extending entirely across the stream, completing the work in 1891. The west end of this dam was about seventeen feet above the natural depression of the table rock of the stream on the west side, and, the east end, about nine feet above. Scheurich's home was then where it is now, about two hundred and fifty yards from the dam and to the northeast of it. He was road overseer, and while the work of construction was going on he protested to the superintendent of the work against the construction of the dam, both as road overseer and personally, as owner of the adjacent farm, contending that it would obstruct the public road whch crossed Shoal creek above the dam, would overflow his lands and be deleterious to the health of his family. His protest went unheeded and he took no legal step to interfere with the work, which was completed and remained of the dimensions stated until 1896. In the latter year the power company went into the hands of a receiver and afterwards, by the consolidation of certain companies at Webb City and Joplin, the present defendant, the Southwest Missouri Light Company, was formed and acquired the property of the defunct Southwest Missouri Electric Light & Water Power Company. The company last named, when it built the concrete and wooden dam in 1891, did not comply with the statutes in regard to petitioning the circuit court for permission to obstruct the creek. The plaintiff contends that in 1896 the dam was raised six inches by increasing the height of the wooden superstructure, the previous superstructure having been washed away

in a freshet. The new woodwork was started on Sunday morning, August 9, 1896. Plaintiff saw men at work on the dam as he was on his way to Joplin to attend church, and notified the superintendent, George Myers, who was also superintendent of the construction of the dam in 1891, not to proceed with the work. He was given a sharp answer and no attention paid to his remonstrance. The defendant contends that the wooden superstructure at its present altitude, had formed part of the dam ever since the concrete dam was put in in 1891, and was replaced in 1896, as it was at other times when floods washed it away; whereas the plaintiff's contention is that its height was increased in 1896, thereby increasing the height of the dam that much and causing more mischief to his farm and the health and comfort of his family. Under the declarations of law given by the court, this question of fact becomes important. The court declared, at the request of the defendant, that if the dam complained of was built to its present dimensions more than five years before the bringing of this suit, and the plank top placed there more than five years before, constituting a part of said dam and used as a part of it ever since except when carried away by floods, plaintiff was not entitled to recover any damages. If, as contended by the plaintiff, the dam was raised in 1896, by increasing the height of the wooden superstructure, it was done in disregard of the statutes; for no steps were taken to procure the permission of the circuit court to increase the height of the dam; nor could permission have been procured by the defendant, as will appear. Plaintiff alleges that the dam thus unlawfully constructed backs the water of Shoal creek over his farm, or portions of it, more than ever, rendering the overflowed portions unfit for cultivation; that it causes a convenient public road from plaintiff's home to Joplin to be overflowed so that it can not be longer used, forcing the plaintiff to travel a longer and less convenient route below the dam; that

lands of the plaintiff which were of a mineral character have lost their value in that regard; that the stagnant water behind the dam generates foul gases which pollute the air and seriously affect the comfort and health of the neighborhood, including the plaintiff's family, and have caused a great deal of sickness in his family and the families of other persons in the vicinity; that in consequence of these injuries his farm has been greatly depreciated in value and the value of the rents and profits lessened. The petition further declares that the dam is a public nuisance under the law; that plaintiff has been damaged by it in the sum of $5,000, and is entitled under the statutes to recover double damages, to-wit; $10,000, judgment for which, as stated, was demanded, and also for an injunction restraining the maintenance of the dam.

The answer denies that any of the plaintiff's land is overflowed because of the dam, denies generally the allegations of the petition, says that all the acts complained of by the plaintiff were done, if at all, more than five years prior to the institution of the action, that his damage, if any, occurred more than five years prior thereto, and the relief asked is barred by the statute of limitations. Besides those pleas, the answer sets out that in the summer of 1889 and 1890, the Southwest Missouri Electric Light & Power Company purchased the Moffett dam and improved the same and put in other improvements to create and erect a light and power plant, disbursing in so doing the sum of more than one hundred thousand dollars, which the plaintiff saw invested without taking any steps to prevent such outlay of money, and by his silence encouraged and acquiesced in the erection and remodeling of the dam. The answer further states that the dam remained always in the condition it was after it was remodeled in the years 1889 and 1891 except that the wooden superstructure two feet high was washed off during a freshet and was afterwards put back as it was

before the flood. It is further averred that the present
defendant purchased the property and assets of the
power company in 1896, including the electric light
plant, land and dam belonging to it, and since said pur-
chase has made extensive improvements in the plant
which cost a great sum of money; that the plaintiff
knew of such outlay by this defendant and willfully
stood by and without objection allowed and tacitly con-
sented to the outlay, thereby encouraging and abetting
it. The answer contains another paragraph, pleading
that on July 10, 1899, the defendant instituted a suit
in the circuit court of Newton county under the provis-
ions of chapter 131, of the Revised Statutes of 1889,
entitled "Mills and Milldams," praying for a writ *ad
quod damnum,* to which proceeding plaintiff Scheurich
appeared; that thereafter another writ *ad quod dam-
num* was issued and a jury awarded this plaintiff one
hundred dollars for his damages and made other findings
in reference to the injury he had sustained by rea-
son of the same; that this finding of the jury was in
full for all damages sustained by Scheurich on account
of said dam and the verdict of said jury, and the pro-
ceedings in the case are pleaded in bar of plaintiff's
present action.

The evidence showed that the former public road
from plaintiff's home to Joplin, his market town, was
rendered impassable and he was forced to use the lower
road to go there. This resulted from the dam as built
in 1891. The evidence tended to show that three or
four tracts of the plaintiff's land were more or less af-
fected by the backing up of the water; that the back-
water behind the dam, extending north more than a mile,
formed an extensive pool or lake. A tract of land, forty-
five acres in extent, was rendered wet and less useful
for cultivation, not by overflow, but by percolation of
water through the bank of the creek, supposed to be
due to the level of the creek being raised by the dam
so that the water came in contact with a more porous

layer of soil which it did not reach when standing at
its natural height.  The trial court allowed no damages
as to this tract, but declared the plaintiff could not re-
cover therefor.  Neither was anything allowed for the
obstruction of the road mentioned above.   There  is
another tract of ten acres which the testimony tends
to show is overflowed at times and rendered untillable
by the backwater ,and still another tract of three acres
which is overflowed almost constantly, as is a one-acre
strip along the bank of the creek.  The evidence is con-
tradictory and quite uncertain as to just what portion
of plaintiff's farm is subjected to overflow on account
of the dam and particularly on account of its supposed
increased height, due to the work done on the super-
structure in 1896; which, because of the rulings below,
is the point we are concerned with on this appeal.  The
evidence is conflicting, too, as to whether the mainten-
ance of the dam is deleterious to the health of the neigh-
borhood and has impaired the health and comfort of
plaintiff's family.  Witnesses swore it had induced ma-
laria in the vicinity, and other witnesses swore to the
contrary.  It was shown that much capital was invested
in the dam and the light and power plant connected
with it, but was not shown with any certainty or clear-
ness that the operation of the plant or its value de-
pends on keeping the wooden portion of the dam at
its present height.  In fact the plant is operated by
steam power and can be operated without the use of
that portion of the dam at least.  It was operated once
for three months when the water was out of the dam.
There was testimony that the water collected by the
dam is changed about once in forty-eight hours, but
this is in dispute.  There was testimony for the plain-
tiff tending to show that an accumulation of weeds,
timber, dead fish and other substances behind the dam
caused the emission of foul gases and odors into the

atmosphere to the discomfort of people in the vicinity and of the plaintiff's family.

A declaration that the plaintiff, if entitled to a verdict at all, should only recover nominal damages was refused, as was a peremptory one for a finding in the defendant's favor.

At the request of the defendant the court gave the following declarations and the plaintiff excepted:

"First. The court finds that the defendant in this case became the owner of the dam on the twentieth day of April, 1896. The court declares the law to be that the defendant is not liable for any damages, if any was done, prior to that date.

"Second. Under the evidence in this case the plaintiff can not recover any damage for injury to crops or otherwise on the tract of about forty-five acres near the center of his farm mentioned by plaintiff in his evidence as being injured by water percolating through the soil and settling therein.

"Third. The court declares the law to be that the defendant is not liable in this case for the digging out of the road and the changing of the ford, or for old roads being shut up near plaintiff's land, if any, or for the lowering of the creek and spoiling the ford below the dam, if any such thing in fact occurred. Nor for any other act which was done prior to the defendant's ownership of the dam in question (April 17, 1896).

"Fourth. The court declares the law to be that if the dam complained of was built to its present dimensions more than five years previous to the bringing of this suit, and that the plank on said dam was placed there more than five years previous to the bringing of this suit and was a part of said dam and had been used as a part of said dam ever since except when carried away by a flood, and that after being carried away it was put back as soon as practicable and so continued to be a part of said dam, then plaintiff is not entitled to recover any damages in this case.

"Fifth. The court declares the law to be that the burden is upon the plaintiff to prove the amount and extent of the damages; if any, caused by the building of the defendant's dam, that if he had been damaged by overflow caused by the natural high water or unusually heavy floods and which damage would have occurred even if defendant's dam had not been built, then he is not entitled to recover for such damage. And if part of his damage was caused by such high water or floods and part by the defendant's dam, then he can recover for such damages as would not have occurred except for the dam; and it is for the plaintiff to show the extent of the damage caused by the dam, if any; and if some damage has been caused by the dam but the court is unable to determine from the evidence how much, then the finding should be for only nominal damages."

Thereupon the court found the issues for the plaintiff as to his cause of action for damages, assessed his damages at $150, and rendered judgment for double that sum, or $300. Thereupon the plaintiff filed the following motion for an injunction:

"Plaintiff upon the basis and by reason of the finding and judgment for damages herein by the court and the pleadings and proof herein, moves the court to issue its writ of injunction against defendant, enjoining and prohibiting the further maintenance of the dam and obstruction complained of as obstructing Shoal creek stream and the public road from plaintiff's premises to his postoffice and trading town, Joplin, and as accumulating stagnant water to the injury of the plaintiff's health and that of his family, and as percolating and overflowing plaintiff's lands, gardens and fields for the reasons following:

"Under the law and the evidence plaintiff is entitled to such injunction as the only effective and adequate remedy against the defendant's wrongful and continuing acts and to save the otherwise burdensome,

and multiplicity of, actions for damages by reason thereof, all as sought by the petition herein.''

The court overruled said motion and denied the plaintiff an injunction against future maintenance of the dam. Both parties appealed originally, but the appeal of the defendant was not perfected. The only complaint made by the plaintiff is that the court erred in refusing to grant an injunction.

The defense to the plaintiff's action based on the condemnation proceedings instituted by the defendant in the Newton county circuit court is conceded to be out of the case. That proceeding was carried to the Supreme Court where it was determined, not only that the dam had been built without authority of law, but that the defendant was not entitled to the privilege the statute accords in regard to proposed dams across watercourses. Those privileges are intended for the benefit of the owners of public grist mills, not for the benefit of companies organized to furnish light and water to cities; which, therefore, are granted no right of eminent domain under the statute in question to take or damage private property in constructing or raising a dam over a watercourse. [S. W. Mo. Light Co. v. Scheurich, 174 Mo. 235.] In view of that adjudication the dam must be regarded as a public nuisance which is liable to be totally abated at any time at the instance of the proper authorities. Under the statutes all dams, stoppages or obstructions of watercourses not made according to law, shall be deemed public nuisances and dealt with as such. [R. S. 1899, sec. 8752.]

The plaintiff's standing as a private citizen to abate the nuisance is challenged. In our opinion his right turns on whether he had suffered peculiar or special damages from the nuisance, beyond that done to the public at large. It is urged that the State alone can take action against this dam by indictment, petition in equity, or some other appropriate remedy initiated by its officials charged with the duty. The ar-

gument is that the nuisance is exclusively a public one, and exists as such by virtue of a statutory declaration; therefore, is not subject to abatement at the suit of an individual. If the dam was no more than a public nuisance by virtue of the statute which denounces all obstructions of watercourses built in violation of law, the appellant's position would be tenable. But according to the finding of the court below it is more. It is a private nuisance as well; a nuisance in fact, which causes peculiar annoyance and injury to plaintiff and some of his neighbors. A person specially distressed or damaged by a nuisance of a public sort has a remedy notwithstanding the power and duty of officials to proceed in the name of the State for the protection of the general public. Relief to the specially injured individual at his private suit has long been given both at law and in equity. [Smiths v. McConathy, 11 Mo. 518.] In Welton v. Martin, 7 Mo. 307, the court said on this question, in a case for the unlawful construction of a dam, that the statutes are merely cumulative in declaring a milldam a public nuisance, which they did for the sake of the remedy in favor of the public and not to impair the remedies individuals enjoy at common law against such structures as private citizens. The opinion reads: "Admitting that the obstructions complained of could only be regarded as a public nuisance and consequently removed by proceedings at the instance of the State, yet the law is clear that when a public nuisance causes a special damage to an individual, he has the same remedies for that damage, and none other, which he would have had if the injury had proceeded from a private nuisance." That suit was by Martin, complainant, against Welton and Edwards, to enjoin the maintenance of a dam built without legal authority after the complainant had put in a dam. The effect of the new dam was to back the water of the stream so as to obstruct the complainant's mill and machinery. It was urged in opposition to the relief

asked, that if the statute made the defendant's unauthorized structure a nuisance, equity had no jurisdiction and the mischief must be abated by indictment. The objection was overruled with the observations above. Martin was denied an injunction on the merits, he having enjoyed no long priority of right, as the two dams were constructed at the same time, and having suffered neither irreparable injury nor established his right by a trial at law. The contention in regard to the disability of a private party to sue was renewed in Arnold v. Klepper, 24 Mo. 273, and was similarly treated by the Supreme Court. Counsel for the appellant say the latter case supports their position, but we have not found that it does. It was substantially like the preceding case, as both plaintiffs and defendants owned milldams so near that the former prayed relief against the maintenance of the latter's dam as interfering with plaintiff's mill. The defendants' dam was erected without compliance with the statutes. It was true an injunction was denied, the court saying the dam was a public one which might be destroyed and that plaintiffs could set in motion criminal proceedings; but the essence of the matter was that plaintiffs' had not shown their right by an action at law. The court remarked that the plaintiffs could sue for damages and if successful might then have an injunction, and that though a private injury resulting from a public nuisance could be checked by an injunction, yet this would not be done until the complaining party had established by a legal action, his right to redress; citing and approving Welton v. Edwards. These decisions sustain the proposition that a public nuisance, and one of the sort complained of in the case before us, will be restrained at the suit of a private person who suffers a special injury when the circumstances render relief by injunction appropriate; and particularly when the complainant has first successfully prosecuted an action for damages, thereby establishing, by the verdict of a jury, or

a court sitting as a jury, the existence of the nuisance and its peculiar injury to himself. The rule that a legal action must precede the equitable one is less rigidly adhered to now than formerly, and only insisted on where the complainant's right is doubtful. ' Scheurich first obtained damages on a trial below wherein the defendant could have availed itself of the right to a jury trial if it desired, but waived that right. It follows from the decisions we have cited, and many others which might be cited, that the plaintiff was not to be refused a remedy to abate the annoyance and injury to himself caused by the dam, because it happened to be a public nuisance. And it was proper for him to plead the necessary allegations for equitable relief by the writ of injunction, in a petition which called for damages too. [Paddock v. Somes, 102 Mo. 226; Baker v. McDaniel, 178 Mo. 447.] The court below, as trier of the fact, having assessed damages in plaintiff's favor, thereby established that the dam was a nuisance in fact as well as in law and that it caused special injury to the plaintiff. This judgment laid the foundation for equitable relief at plaintiff's suit against the continuance of the nuisance.

As to the point that the averments of the petition are insufficient to warrant such relief, we reply that they are like those of the petition in Paddock v. Somes, wherein an injunction was deemed proper and not to be denied after the plaintiff had succeeded on the legal side of his case. Scheurich's petition states that the stagnation of the water of Shoal creek by the dam, the collection of debris behind the dam, the consequent pollution of the atmosphere, to the detriment of his family's health and the overflow of parts of his farm will continue if the dam remains in its present state; that his injury is irreparable, the legal remedy inadequate, and to avoid a multiplicity of suits, the continuance of the dam as it is ought to be restrained. Those allegations, in connection with the other averments stating

the case for damages, were enough to let in evidence
for equitable relief. The essential fact to be averred
and proved, when an abatement of a nuisance is asked,
and not simply compensation in damages for the mis-
chief it entails, is that the annoyance and loss is con-
tinuous or recurrent and irreparable in damages. [2
Wood (3 Ed. ), chap. 24.]

Plaintiff sued on the statute giving double dam-
ages to any person injured by the unlawful construction
or heightening of a dam across a watercourse, and it
is argued that as damages were awarded him, he got
more than the compensation he would have obtained by
a condemnation proceeding, and having been compen-
sated for the entire loss sustained because of the rais-
ing of the dam, will not be heard to insist on an abate-
ment of it, to any extent, as constituting a continuous
nuisance. This argument is a *non sequitur*. The stat-
ute does not make a judgment in favor of a party for
double damages a substitute for a condemnation pro-
ceeding, so that when a party recovers the damages he
is estopped to further complain. There is nothing in
the statutes to suggest that a recovery of the forfeiture
provided shall cut off an aggrieved party from his right
to have a nuisance created by a dam enjoined if the
facts justify such relief. If a person proposing to build
a dam proceeds according to the statutes, he can ob-
tain no permission to build it if the result would be the
creation of a nuisance by overflowing the premises of
adjoining proprietors or impairing the health of the
neighborhood. [R. S. 1899, sec. 8744.] If the argu-
ment of the defendant's counsel is sound that the re-
covery of double damages takes the place of a proceed-
ing under the statute, the recovery of damages would
give the dam owner the right to maintain its structure
as against the party injured, though his premises were
submerged or the health of his family impaired; and,
therefore, such a judgment would confer a greater right
on the dam builder than a regular condemnation. Be-

sides, this defendant is not entitled to construct and maintain a dam even by proceeding in accordance with the statutes.

It is said that the plaintiff should be denied an injunction because his injuries from the dam at its present height were of a kind that could be recovered in a single action; that the injuries were permanent and sustained when the nuisance was created, and therefore were fully compensated by the judgment in his favor, precluding further relief in his behalf. According to the ruling of the circuit court the only nuisance for which the present defendant can be held responsible is that caused by raising the dam in August, 1896. The court ruled that the defendant was not responsible for injuries which resulted from the dam as it was before that time, for the reason that this defendant was not previously the owner of the property. We would have been assisted on this branch of the case if the court had made specific findings as to what injuries the plaintiff sustained from increasing the height of the dam in 1896, and whether his injuries were due to the overflow of his lands rendering them untillable, the destruction of his crops, the impairment of his family's health by malaria and of the comfort of their home by vile smells, or all those injuries. There is evidence that three or four tracts are now subject to periodical overflow, rendering their tillage precarious and unprofitable. A three-acre tract is submerged frequently; also a ten-acre tract, which formerly yielded good wheat but no longer does. A one-acre strip runs along the bank of the creek and is probably overflowed constantly when the dam is full. The submergence of the larger part of these tracts, we gather, depends on the stage to which the waters of the creek rise at different seasons, but is sufficient to impair, if not destroy, their value. It is in testimony, too, that while they were overflowed some before the dam was raised in 1896, the submergence is over a larger area now. Such are the

facts in regard to the effect on plaintiff's farm of rais-
ing the dam, as well as we can collect them from the
discordant evidence. Some of the elements of damage,
such as injury to crops and to health, could not well be
anticipated and recovered in advance. The petition
asked for no damages except those which antedated the
suit; that is to say, did not seek future damages; and
indeed, could not have done so consistently, as plain-
tiff was asking an abatement of the nuisance so that
no future damage would result. The nuisance, too, be-
ing a public one, was liable to be abated at any time;
which fact would probably have been brought forward
against the contention that plaintiff was entitled to re-
cover damages for future years. We think the case was
brought and tried on the theory that plaintiff could be
awarded damages only for injuries already sustained.
The fifth declaration given at the instance of the de-
fendant proceeded on that assumption, as it authorized
damages only for previous overflows and for such as
had been due to the dam and would not have resulted
except for it. The fourth declaration was inconsistent
with this theory in barring plaintiff from any recovery
if the dam was raised more than five years before the
suit was brought and remained continuously at the
same altitude. This declaration adopted the theory
that the statute of limitations ran from the date the
dam was raised, presumably on the assumption that
whatever injury it would cause, resulted immediately.
The court departed therein from the theory of the
fifth declaration and it seems to us, from the theory
on which the defendant as well as the plaintiff, tried
the case. Considering the evidence introduced, the
fact that plaintiff only asked for past damages, accom-
panying this demand with a prayer for an injunction,
and the further fact that the dam is subject to abate-
ment at any time as a public nuisance, we hold plan-
tiff was awarded compensation only for damages al-
ready sustained. The case at this point resembles Pin-

ney v. Berry, 61 Mo. 359. [See, too, Van Hoozier v. Railroad, 70 Mo. 145; Dixon v. Id. 71 Mo. 575; Bunten v. Id., 50 Mo. App. 414; Carson v. Springfield, 53 Mo. App. 289.]

The circuit court having found the issues for the plaintiff on the law side of the case, his counsel advanced the proposition that he was entitled to an injunction against the continuance of the dam at its present height as a matter of absolute right, since it is apparent that whatever mischief had previously resulted from raising it would continue or recur. For the defendant it is insisted that the plaintiff is debarred from an injunction by his laches; and, further, that the loss to the defendant which would attend such a remedy, would be so enormous in comparison with the benefit to the plaintiff, that, in its discretion, a court of equity ought to refuse an injunction. As to the plaintiff's laches, we think there was none. He protested against the dam being raised when the defendant set about raising it in August, 1896, and gave notice that the defendant was acting against his right and would injure him. The work was undertaken in a manner which suggests consciousness on the part of the defendant that it was unlawful and might be resisted; for it was initiated on Sunday. By chance Scheurich discovered it at once and protested; protested, too, to the same superintendent to whom he had protested in 1891, and with the same futility. His remonstrance was unheeded and he was insulted. The defense pleaded in this connection is that by remaining silent and doing nothing, Scheurich encouraged and acquiesced in the raising of the dam. There was no testimony to show he acquiesced or withdrew his protest. The defendant simply disregarded his remonstrance, as it did the law, and went on with its enterprise. In doing so we think it took the risk of being proceeded against by Scheurich. There was some delay on his part, less than three years, however, but no acquies-

cence. He swore that if he had had the means he would have sued sooner. Acquiescence is a branch of the law of estoppel and depends on the same principles. It is idle to say the defendant was induced or encouraged to raise the dam by Scheurich's delay in bringing the suit, when his remonstrance was flouted. Men are reluctant to incur the expense of litigation against a wealthy adversary and will refrain from doing so until their grievance becomes intolerable. We have been cited to no authority by which Scheurich ought to be denied relief because he did not sue sooner; and there are many to the contrary. This subject was gone into in St. Louis Safe Deposit & Savings Bank v. Kennett Estate, 101 Mo. App. 370, 402 et seq., to which reference is made for the result of the cases. Scheurich gave timely notice of his rights and objection to an increase of the altitude of the dam and is not now estopped to complain. Plaintiff's inaction in regard to the dam put in in 1891, ought to constitute laches to debar him from relief against the structure as it was then built. He submitted to the injury it wrought for five years and saw the defendant purchase and improve it at a heavy outlay. While that structure is subject to abatement at any time by State officials, Scheurich's conduct precludes him from complaining of it. As he let the original builder operate and use it for so long an interval without seeking redress, it would be unjust to afford him relief against the defendant, which might have refrained from buying if he had asserted his right against the Southwest Missouri Electric Light & Water Power Company, or had protested to the defendant before it purchased. This doubtless was the theory on which the lower court acted and its ruling in that regard will be respected by us. Indeed, we are not asked to go further than to relieve against the injury entailed by raising the dam in 1896. The circuit court must have found the injury to the plaintiff for which it awarded him damages, was due to increasing the height of the dam in 1896. The-

declarations of law given and the judgment which followed them compel that conclusion. In the first declaration the court held the defendant was not responsible for any damages sustained prior to April 20, 1896, when it acquired the dam, and the fourth declaration held that if the dam was built to its present dimensions, and the planks were on it as a part of it, more than five years previous to the beginning of this suit and remained there, being replaced as soon as practicable when swept away by a flood, plaintiff could not obtain any damages. Those declarations demonstrate that the court deemed the defendant answerable only for injuries done during the period of its ownership and only for such injuries done during that period as resulted from increasing the dimensions of the dam. No increase of dimensions is asserted to have occurred except an increase of altitude, and the dispute between the parties is as to whether the wooden superstructure was raised in 1896, or merely replaced at the height it stood before. The testimony for the defendant is that the superstructure was put on the concrete dam when it was built, was of the same height it is now and has always been on and of the same height except when temporarily carried away by freshets. Scheurich testified there was a wooden superstructure prior to 1896, but that it was six inches lower than the one erected and now on the dam. As judgment was given for the plaintiff, it follows; in view of the declarations, that the court found, according to the plaintiff's testimony, that the height of the dam had been raised by adding to the height of the wooden portion after the defendant acquired the property in 1896. It follows, too, that the court found this increase of height had injured the plaintiff and entitled him to damages. These facts we regard as being established by the judgment below. If the raising of the dam has inflicted injury on the plaintiff in the past, the injury will continue or recur. There is no reason to believe the land will escape over-

flow in the future on account of the increased altitude
of the dam, if it has sustained overflow in the past on
that account, or that the health of the plaintiff's fam-
ily will not be as much impaired in the future as in
the past. It is difficult to see how raising the dam
seriously increased sickness in his family, but it might
do so by enlarging the area of stagnant water. By the
same cause the disagreeable odors emitted into the
surrounding atmosphere could be rendered more sen-
sible. Whatever mischief was done by enlarging the
dam would constantly recur; of that there can be no
doubt; and with the case in this posture, we know of no
principle on which the plaintiff can be denied an abate-
ment of the nuisance. In Paddock v. Somes it was said
that if the right was established at law and the nuisance
was of a continuous character an injunction would fol-
low as a matter of course, regardless of the smallness of
the damages suffered. This may be stating the rule too
broadly, especially as regards a public nuisance; as
to which some weight is lent to the fact that public
officers have not proceeded for an abatement. Proba-
bly the court did not intend to state a rule universally
applicable. But generally speaking, when a plaintiff
has obtained damages for a nuisance in a legal action,
and the nuisance is continuous or recurrent, he is en-
titled to its abatement; and there is no reason why this
case should be made an exception. If the defendant's
plant would be destroyed or largely diminished in
value, a court of equity might, and probably would hes-
itate to grant an injunction. It is not necessary for us to
decide what weight such a fact would have in this case,
after an invasion of substantial rights of the plaintiff
has been shown and irreparable injury. [Paddock v.
Somes, 102 Mo. l. c. 228.] Courts are not prone to re-
fuse to abate a nuisance productive of such conse-
quences on account of the loss that will follow; but it
can not be said they never defer to the loss that will
be wrought. [Wood, Nuisances (3 Ed.), chap. 24 and

notes.] Neither is the extent of the injury done by the nuisance a decisive fact. The law on the subject is not so clear that we care to lay down a proposition, when to do so is unnecessary for the decision of the case in hand. A careful study of the testimony has satisfied us that the business of the defendant and the operation of its plant will not be interfered with by reducing the plank portion of the dam to its previous height; that is, six inches lower than it is now. No great expense will be entailed thereby or the defendant's property depreciated. If the dam is to remain at its increased altitude, against which plaintiff protested, and continue to add to his loss and discomfort, simply because it is there and will cost the defendant some expense and inconvenience to remove, the structure may be raised by successive additions until plaintiff's entire farm is submerged or his home made uninhabitable by bad odors or malaria. The dam is an unlawful structure and it is no harsh treatment of the defendant to require the removal of that portion which was built in disregard of plaintiff's protest and constitutes a nuisance specially injurious to him.

The judgment is reversed and the cause remanded, with a direction to the circuit court to enter judgment that the defendant lower the height of the wooden portion of the dam to what it was in 1896; that is, six inches lower than it is now.

All concur.