# VIRGIL CAMBEST, et al., Respondents, v. McCOMAS HYDRO-ELECTRIC COMPANY, Appellant.

## In the Kansas City Court of Appeals, December 4, 1922.

1. **WATERS AND WATERCOURSES:** Damages: Landowners Suffering Special Injury Produced by Erection of a Dam Across a Stream, Held Entitled to Maintain Suit to Restrain Same. In an action by owners of lands contiguous to and bordering upon a river, to enjoin the maintenance of a dam across the same at an increased height, evidence as to frequent overflows thereof *held* sufficient to justify a finding that said landowners suffered a special injury on account of conditions directly produced by the erection of the dam and to authorize those so injured to maintain suit to abate the same.

2. **APPEAL AND ERROR:** In an Equity Case Appellate Court not Bound by Chancellor's Findings. In an equity case the appellate court is not bound by the Chancellor's findings.

3. **NUISANCES:** Special Injury: Private Individuals May Maintain Suit to Abate a Public Nuisance Where They Suffer a Special Injury Over and Above That Suffered by the Community at Large. Even though the petition states facts which show that the nuisance complained of is a public one, yet private individuals can maintain a suit in equity to abate it, if it is alleged and shown that they suffer a special injury over and above that suffered by the public or community at large, and that the injury is a continuing one.

4. **PLEADING:** Petition: Petition to Enjoin Maintenance of Dam Causing Overflow of Lands, Held to State Facts Constituting Special and Peculiar Injury to Plaintiffs and not Mere Conclusions as to Injury. In an action by landowners to enjoin maintenance of a dam across a river causing flooding of lands, a petition alleging that plaintiffs are owners of real estate contiguous to and bordering upon river, that the dam causes the waters of river to back up, leave its banks and overflow lands and highways, that the overflow of said lands caused thereby have rendered said lands wet and marshy and their value greatly depreciated and that pools and ponds of foul smelling water have collected thereon, *held* to sufficiently state facts constituting special and peculiar injury, and not merely a statement of conclusions as to injury.

5. **NUISANCES:** Equity Will Grant Relief Against Continuing Nuisance Without Requiring Plaintiff to First Establish Nuisance and

Cambest v. McComas Hydro-Elec. Co.

Right to Damages in a Court of Law. In a clear case, equity will grant relief against a continuing nuisance without waiting for plaintiff to first establish the nuisance and his right to damages in a court of law.

6. NAVIGABLE STREAM: Under Federal Test Platte River Held not Navigable Stream. Under the Federal test, the Platte River is not a navigable stream.

7. WATERS AND WATERCOURSES: Owner of Dam in Increasing its Height Must Comply with Statutory Method Authorizing Same. Under section 21, Revised Statutes 1845, p. 747, as amended in 1905 (Revised Statutes 1909, section 5475) providing a method of increasing the altitude of dams, the owner of a dam must comply therewith, although the Act as originally passed did not specify the height of the dam or limit its height.

8. ———: Grants: Privileges: Construction: Grants Authorizing Maintenance of Dams Over Streams Must be Read and Construed in Light of Time and Circumstances Under Which They are Granted. Grants authorizing the maintenance of dams over streams are to be read and construed in the light of the times and circumstances under which they are granted.

9. ———: The Maintenance of a Dam Unlawfully Existing May be Enjoined. Where a dam had been erected to a height of eight feet in accordance with statutory authority as provided in Laws of 1845, p. 747, the owner thereof had no right to reconstruct said dam so as to increase its height by 7½ feet and sufficient to operate an electric power plant, and hence the same being unlawful, equity will restrain its maintenance; the remedy provided by the Act of 1845 for changing height of dams, under the circumstances, not being exclusive.

10. ———: The Claim that Greater Damage Will be Cause by Abatement Than that Resulting from Dam Unlawfully Existing, Held no Defense. The claim that the damage done to owner of dam by abatement thereof is out of all proportion to the damage done by existence thereof, cannot be invoked as a defense to enjoin the maintenance of a dam unlawfully existing.

Appeal from the Circuit Court of Buchanan County.— *Hon. Lawrence A. Vories*, Judge.

AFFIRMED.

*Strop & Mayer* and *Graham & Silverman* for respondent.

*John E. Dolman* and *Sam Wilcox* for appellant.

TRIMBLE, P. J.—This is an action in equity brought, as the petition alleges and the evidence shows, by the "owners of real estate . . . , contiguous to and bordering upon, and in the immediate vicinity of, Platte river," to enjoin the maintenance of a dam across said stream.

The answer pleaded as authority for the construction and maintenance of said dam, an Act of the General Assembly of Missouri, approved February 27, 1845 (Laws of Mo. 1845, p. 77); that the dam erected thereunder was maintained ever since and defendant succeeded to the right granted thereby; that in 1914 defendant reconstructed said dam and built a hydro-electric power plant for the generation of electric light and power; that plaintiff never protested against the reconstruction of said dam until long after it was built and was estopped by laches; that "whatever consent was necessary" to be obtained from the U. S. Government was obtained prior to the reconstruction thereof.

The evidence shows that, under the Act of 1845 relied upon by defendant, a dam was built eight feet in height and a mill was established there to grind wheat and corn. In 1907 or 1908 the dam washed out and did not hold any water there, and no use of the place as a water power site was made, nor was any attempt made to replace or repair the dam or to use it for any purpose whatever until in 1914 when defendant, having purchased the land whereon had been the former mill site and dam, erected a concrete dam fifteen and one-half feet in height entirely across said river. During the construction of the dam various of the landowners adjacent to the river protested against its erection. The dam was built, however, and soon thereafter the waters which it held back

washed around the end and formed a new channel. Defendant thereupon extended the dam on until it was across this additional channel, though at first this extension was not built up to the height of the rest of the dam. Later, because the dam, as thus constructed would not supply enough water, for defendant's purposes, the extended portion of the dam was raised to the height of the other part.

Platte river has a fall of about one foot to the mile, and the dam backed the water therein for a distance of fifteen miles. Plaintiffs' evidence is that before the dam was built the banks of Platte river were fourteen or fifteen feet high in ordinary times, but they were, at the time of the trial, only four or five feet high; that when the water level is at the top of the dam, the river is ready to flow out into surrounding lands. A number of creeks flow into Platte river above the dam, some of which are of considerable size, one being about sixty miles long and enters Platte river about four miles above the dam and has a mouth twenty feet wide. These creeks prior to the building of defendant's dam properly drained the surrounding farms and speedily carried off the surface water. But the evidence is that after the dam in question was built, the mouths of these creeks were thereby caused to be filled up with silt, sediment and rubbish, and this, as well as the water standing and held in Platte river, caused the waters in the creeks to back up for considerable distances, whereby the creeks themselves have become filled up and do not drain themselves speedily like they did before, and the construction of the dam has prevented the creeks from thus draining themselves so that they no longer drain the lands as before. The evidence further is that the dam backed water up over, and affected the use of, various roads which gave access to plaintiffs' lands and that while, prior to the construction of defendant's dam, small rains would not cause an overflow, yet after that they did, and that the dam not only causes such over-

flows, but the water remains upon the lands overflowed for such a length of time that they have now become wet, marshy, and unfit for the cultivation and raising of crops thereon; that not only do the creeks overflow from the causes named above, but that the water standing at such a high level seeps through the banks or rises by capillary action so as to make lands wet that would not otherwise be in that condition; that the tiling put in by some of the plaintiff landowners has been rendered useless for drainage purposes because the tiles have been filled up owing to the deposit of sediment therein by the waters held standing therein instead of being allowed to flow freely through them. In fine, the evidence is such to justify not only the Chancellor but us in saying, and indeed requires us to say, that unquestionably the plaintiffs have suffered a special injury on account of conditions directly produced and brought about by the erection of the dam. We have carefully read the evidence in the case and cannot agree with defendant that it fails to show damage to plaintiffs' lands. It is true these lands, or at least some of them, are bottom lands and are subject to overflow in times of high water, but the erection of this dam, fifteen and one-half feet high, not only causes more frequent overflows and from lesser and theretofore insufficient causes, but it prolongs the presence of the water upon the lands after it has reached them, and causes water by seepage to dampen and injure land that would not otherwise be affected in that way. We do not overlook the evidence of the defendant's engineer that from an *engineering* standpoint the river's carrying capacity *over the dam* is greater than the original channel of the river before the dam was built. This, if true, does not controvert the *practical* fact that the dam causes the drainage facilities to fill up, and that the lands are overflowed and damaged in the way above indicated. It may be that *theoretically* the carrying capacity *over the dam* in times of high water or floods is greater than the channel of

the river was originally and before the construction of the dam, but this does not controvert the fact that before the carrying capacity over the dam is reached or becomes available the damage is accomplished, nor that damage is caused by conditions created by the dam at more frequent intervals and by less otherwise effective causes than the high floods that sometimes do come and overflow certain lands, even though no dam whatever were there. This being an equity case, of course we are not bound by the Chancellor's finding, but our view of the evidence affords us no opportunity to reach a conclusion on this matter different, in any substantial degree, from his.

At the trial the Chancellor overruled defendant's motion to dismiss the bill, and defendant now urges that it should have been sustained. It is no doubt well settled that even though the petition states facts which show that the nuisance complained of is a public one, yet private individuals can maintain a suit in equity to abate it, if it is alleged and shown that they suffer a special injury over and above that suffered by the public or community at large, and that the injury is a continuing one. [Baker v. McDaniel, 178 Mo. 447, 472; Caskey v. Edwards, 128 Mo. App. 237, 242; Hodson v. Walker, 170 Mo. App. 632, 637.] The theory underlying the motion to dismiss seems to be that the allegation of special injury to the plaintiffs are mere *conclusions* and not the statement of *facts* in that regard. We do not think so. The petition alleges that plaintiffs are "owners of real estate . . . contiguous to and bordering upon, and in the immediate vicinity of, Platte River," and that—

". . . by reason of said dam the waters of Platte river have been backed up and raised and said river made deep and dangerous; that because of the damming back of said waters, as aforesaid, the waters of Platte river have been caused to leave the banks of said river and to overflow the lands of plaintiffs, or some of them,

and will in times of heavy rainfall and freshets, and at certain seasons of the year, again overflow the lands of plaintiffs and each of them; that by reason of said dam aforesaid, it has become dangerous and unsafe for plaintiffs and their tenants upon their said lands to reside upon said lands, and that they are placed in constant danger of the waters of said river.

"Plaintiffs further state that by the overflow of said river, as aforesaid, the public roads and highways in the vicinity of said river and said roads become overflowed and inundated so that the said roads and highways become impassable, or nearly so, and greatly interfere with and destroy the power of access to and egress from the lands of plaintiffs hereinabove described.

"Plaintiffs further state that by the maintenance of said dam by defendant, as aforesaid, and the overflow of said lands caused thereby, as aforesaid, said lands have become wet and marshy and their value greatly depreciated; that the waters of said river coming upon said lands, as aforesaid, have congregated into pools and ponds and become foul smelling and breeding places for mosquitos and insects, and a menace to the health of the plaintiffs and their said tenants.

"Plaintiffs further state that in seasons of low water of said river, and because of the obstruction of said waters by defendant, as aforesaid, the waters of said river become sluggish and stagnant, foul smelling and noisome and dangerous to the health of plaintiffs and their said tenants."

These are allegations of facts and not conclusions, and they are such as in themselves state facts of special and peculiar injury to plaintiffs.

Another point made is plaintiffs are entitled to equitable relief as they did not first go into a court of law and establish their right to damages because of the alleged nuisance. Whatever may have been the earlier rule in this regard, it is now well settled that, in a *clear* case, equity will grant relief against a continuing nui-

sance without waiting for plaintiff to first establish the nuisance and his right to damages in a court of law. [Harrelson v. Kansas City, etc., R. Co., 151 Mo. 482, 500; Baker v. McDaniel, 178 Mo. 447, 467; Scheurich v. Southwest, etc., Light Co., 109 Mo. App. 406, 423.]

It is urged that the court erred in finding that Platte river is a navigable stream. The point in this is that if the stream is navigable, then under section 9910, U. S. Comp. Stats. 1916, Vol. 10, (enacted in 1899) it was unlawful to erect the dam unless the same was first recommended by the Chief of Engineers and authorized by the Secretary of War. No such preliminary authority was obtained by defendant when in 1914 it built the dam in question, so that, if Platte river is navigable, then under the Federal Statutes the dam built by defendant was an unlawful structure, a nuisance, and subject to removal by injunction.

The petition alleged that Platte river is a navigable stream. At the trial defendant, when asked if it was agreed that Platte river had been designated by the United States Government as a navigable stream, replied that "It is admitted that the Government has designated this stream as navigable, but as a matter of fact it never has been navigated." The decree does not specifically find that it is navigable and makes no finding whatever in that regard unless it be contained within the general finding that "the allegations of plaintiff are true."

Under the Federal decisions only those streams are regarded as "navigable in law which are navigable in fact. . . . And they are navigable in fact when they are used, or are susceptible of being used, in their *ordinary* condition, as highways for commerce, over which trade and travel are or may be conducted in the customary modes of trade and travel on water." [The Montello, 20 Wall. 430, 439.] (Italics ours.) "The mere fact that logs, poles and rafts are floated down a stream occasionally and in times of high water, does not make

it a navigable river." [United States v. Rio Grande, etc., Co., 174 U. S. 690, 698.] By its own terms, the Federal Statute forbidding dams without authority of the Secretary of War (section 9910, supra) relates solely to navigable waters. [Egan v. Hart, 165 U. S. 188, 192.] Under the Federal test, Platte river is not a navigable stream since the most the evidence shows is that at some time in the remote past it was used for floating logs for short distances to saw mills, that once a party of fur traders went down the river to its mouth in a boat. It is only at certain flood times that the stream has a sufficient amount of water to either float logs or carry a boat. Whether the *State* test of navigability as found in McKinney v. Northcutt, 115 Mo. App. 146, 154, 155, and in Weller v. Missouri Lumber, etc., Co., 176 Mo. App. 243, 256, is different from or less than the Federal test, it is manifest that the Federal Statute, defining rights which depend upon the fact of navigability, would require that the Federal test is the one to be applied in determining that fact. Hence we may readily agree with defendant that, in this sense, Platte river is not a navigable stream. But even so, this does not affect the decree rendered, for there is ample foundation, in both pleading and evidence, to support the decree on the theory of the dam being unlawful under State law, and causing special damage to plaintiffs, without regard to whether it is or is not unlawful under the Federal Statute. Nor does the decree base itself upon any violation of Federal law. The decree recites that the "issues herein" are found for the plaintiffs; that the defendant "without right, warrant or authority of law has and maintains" a dam (which, as has been stated and as will more fully appear hereafter, is true under the State law) fifteen and one-half feet in height "extending from bank to bank entirely across Platte river and obstructing and holding back" the waters thereof, and that said dam "as so constructed and maintained" constitutes a public nuisance, and plain-

tiffs have suffered "special and irreparable injury and damage therefrom and different in character from that suffered by the general public." It is true, the court found that defendant was entitled to have and maintain a dam "to a height of eight (8) feet and no more" and that all in excess of eight feet should be abated, but this does not necessarily mean that the decree is grounded upon the Federal Statute. For while it is true that the rights granted *and exercised* under the State Act of 1845, were not abrogated by the Federal Act of 1899 (Congress never having theretofore legislated on the subject involved), nevertheless, if under State law, the dam erected or increased by defendant was unlawful, then the court, without reference to the Federal law, can be said to have merely held in effect that the right given under the Statute of 1845, as thereafter *exercised,* still remains and is to be allowed to defendant. It may be a question whether the court was right in holding that defendant, under the 1845 Act, was entitled to erect any dam in view of the non-user for seven years of the right granted by that Act, but since plaintiffs did not appeal, we need not decide that matter. The decree is is right regardless of whether Platte river is or is not a navigable stream, if there is any law, outside the Federal Act and of the Act of 1845, making it unlawful to erect the dam that defendant erected. For if Platte river is navigable (which defendant can hardly now claim), there was no permission obtained from the Secretary of War to build the dam; and if it is not navigable, the Act of 1845 will not justify the dam that was built. It is true, the 1845 Act did not specify the height of the dam or limit its height. But the grantees of the right granted by that Act, by their exercise of that right, built only an eight foot dam and thereafter, until its destruction in 1907, never sought or attempted to exercise any right to build a higher dam. Whether this be regarded as an interpretation on their part of the *extent* of the right granted or not, it is certain that it

was the *extent of their exercise* of that right and was sufficient for the purposes for which the grant was made, namely, the "propulsion of *Mills* and other machinery." Section 21, Revised Statutes 1845, p. 747, approved March 3, 1845, provided that the owner of any dam erected in virtue of "any previous law" could increase the altitude of his dam by proceeding as therein directed. This section with an amendment in 1905 so as to include, besides mills, "electric power and light works," afterward became section 5475, Revised Statutes, 1909, and made it incumbent upon defendant in 1914, if it wished to increase the altitude of the dam, to proceed as therein directed. This defendant did not do. By the amendment of 1905 the Legislature showed that the former statutes as to "Mills and other machinery" did not cover "electric power and light works," and hence the Act of 1845 does not contemplate the erection of a dam so high as to furnish power for such a plant. Such grants are to be read and construed in the light of the times and circumstances under which they are granted. [Hill v. Union Electric, etc., Power Co., 260 Mo. 43, 72.] Statutes granting a franchise are to be construed in favor of the public. [12 R. C. L., sec. 21, p. 194.] And in view of all this and the fact that no right was exercised during all the 69 years thereafter to have a dam any higher than eight feet, it ought not to be said that the Act of 1845 granted the right to build a dam seven and one-half feet higher and sufficient to operate an electric power plant which was then wholly undreamed of. Certainly it cannot be said that the necessity of obeying section 5475 for the increasing of the altitude of the dam that was built under the Act of 1845, was obviated. [Scheurich v. Southwest, etc., Light Co., 109 Mo. App. 406, 412.] Section 5475 was not complied with and hence what the defendant did was unlawful if the altitude of the old dam was increased, or, if it was the construction of a new dam (rights under the 1845 Act having been abandoned as plaintiffs claim), then it was

unlawful because of failure to comply with the other provisions of chapter 39, Revised Statutes 1909.

The claim that the remedy provided by the Act of 1845 is exclusive and precludes this relief in equity applies only where there is a dam lawfully existing under said Act and not to one existing unlawfully. The claim is made that the damage done by the abatement ordered is out of all proportion to the damage done by the dam as now existing. We do not understand that such principle can be invoked under the circumstances here disclosed. If so, then anyone unlawfully erecting a thing, with no attempt whatever to obey the law, and with full notice of the facts, can defend against the abatement thereof as a nuisance, on the ground that its abatement would cause the one who erected it to lose a large amount of money.

As we view it, the judgment should not be disturbed. Hence it is affirmed. All concur.